IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD BREDBENNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 11-739-SLR |
| | ) | |
| ROBERT MALLOY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Donald Bredbenner, Laurel, Delaware, Pro Se Plaintiff.

Daniel A. Griffith and Scott G. Wilcox, Esquires, Whiteford, Taylor & Preston, L.L.C., Wilmington, Delaware, Counsel for Defendants Robert Malloy, Ihoma Chuks, and Correct Care Solutions LLC.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant Sgt. Doane.

**MEMORANDUM OPINION**

Dated: March 24, 2014
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Donald Bredbenner ("plaintiff"), a former inmate at the James T. Vaughn

Correctional Center ("VCC"), Smyrna, Delaware, filed his complaint pursuant to 42

U.S.C. § 1983. He proceeds pro se and has been granted leave to proceed without

prepayment of fees. Presently before the court are defendants' motions for summary

judgment (D.I. 91, 93), unopposed by plaintiff. The court has jurisdiction pursuant to 28

U.S.C. § 1331. For the reasons discussed, the court will grant the motions.

## II. BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his

constitutional rights by virtue of defendants' alleged deliberate indifference to serious

medical needs. The court screened the complaint pursuant to 28 U.S.C. § 1915 and

§ 1915A and allowed plaintiff to proceed with claims against Sgt. Doane ("Doane"), as

well as medical defendants Robert Malloy ("Malloy"), Ihoma Chuks ("Chuks"), and

Correct Care Solutions ("CCS")[1] ("collectively medical defendants"). The court

dismissed the claims against defendants Michael Deloy, Chris Kline, and Warden

Phelps.

On the afternoon of December 22, 2010, plaintiff was knocked to the ground on

the basketball court and injured his arm. Doane examined plaintiff's wrist but saw

nothing abnormal. Doane called medical who told him to have plaintiff submit a sick call

slip. Doane also notified relief officers of plaintiff's injuries. (D.I. 2, D.I. 94, Doane's

answers to interrogs. 3-6, 8, 10)

---

[1]Improperly named as Correctional Care Solutions.

That night, the evening corporal saw plaintiff's swollen wrist and took him to the sergeant on duty who immediately called medical and sent plaintiff for medical attention. Robert Davenport ("Davenport"), the nurse on duty, telephoned the on-call physician, Dr. Rodgers ("Dr. Rodgers"), a physician who worked for CCS in the infirmary at the VCC. Dr. Rodgers ordered an ice pack for swelling of the wrist, two types of pain medication, a support and sling. He also ordered an x-ray of the wrist. The physician orders state, "f/u w ppt. 12/23/10." (D.I. 76, ex. A at 1226, 1303-1304)

The next morning plaintiff went out when medical was called, but Doane did not issue him a pass for medical because plaintiff's name was not on the list. An inmate's name must appear on the medical list in order to receive a pass. Additions to the medical list are communicated by medical to the security staff in the building; medical calls the building to inform it of additions. (D.I. 94, Doane's answers to interrogs. 12-14)

An x-ray was taken on December 24, 2010. On December 28, 2010, plaintiff was seen by Chuks, a nurse practitioner. Chuks reviewed the x-ray and it revealed an acute fracture of the distal radius, mild displacement and intraarticular extension. Chuks continued plaintiff's use of a support and arm sling. An orthopedic consultation was written for plaintiff to see Dr. Richard P. DuShuttle ("Dr. DuShuttle"), and the form was given to the consult clerk marked "urgent." (D.I. 57, ans. to interrog. 5, D.I. 76, ex. A at 1185, 1302)

On January 13, 2011, Dr. DuShuttle examined plaintiff, and diagnosed a Colles fracture of the left distal radius,[2] described as a closed comminuted[3] minimally displaced

---

[2]A Colles fracture is a bone fracture of the radius of the wrist in which the lower fragment becomes displaced dorsally. *The American Heritage Stedman's Medical*

2

fracture. Dr. DuShuttle noted that plaintiff had sustained the injury "week(s) ago." Dr. DuShuttle applied a thumb splint, ordered a repeat x-ray, and directed plaintiff to work on his range of motion. The next day, plaintiff was seen by Chuks, and he ordered a repeat x-ray in two weeks. (D.I. 76, ex. A at 1180, 1183-1184)

Plaintiff returned to Dr. DuShuttle on February 10, 2011, and Dr. DuShuttle noted that plaintiff had "improved." Plaintiff advised Dr. DuShuttle that he felt better than the previous visit, but had painful range of motion. Dr. DuShuttle continued plaintiff's use of the brace, recommended physical therapy, and scheduled a follow-up visit for three weeks. Upon plaintiff's return to the VCC, he was seen in the infirmary and physical therapy was ordered two to three times per week for four weeks. (Id. at 1168, 1178-79)

When plaintiff presented to Dr. DuShuttle on March 2, 2011, there was mild improvement. Dr. DuShuttle advised plaintiff that he would have a permanent problem with the wrist noting the fracture was intraarticular and first seen by him "after three weeks." He further advised plaintiff that there was a good chance he would develop arthritis and would need surgery in the future, but it was not an option at the time. Dr. DuShuttle stressed to plaintiff the importance of working on range of motion. Plaintiff returned to Dr. DuShuttle on April 7, 2011 and, at that time, he explained to plaintiff the option of surgery that included ulna shortening with plating triangular fibrocartilage complex resection. Surgery was performed on June 29, 2011. Plaintiff continued to

---

Dictionary 169 (2d ed. 2004).

[3]Broken into fragments. Used of a fractured bone. The American Heritage Stedman's Medical Dictionary 171 (2d ed. 2004).

see Dr. DuShuttle for follow-up through January 2012. (Id. at 1111-12, 1114-16, 1118, 1122-23, 1127-29, 1131-32, 1134, 1142,1146, 1152-53, 1167)

Dr. DuShuttle does not have an opinion, expert or otherwise, concerning the adequacy of the medical care received by plaintiff prior to the time he first saw him. (D.I. 95, ex. B ¶ 6) Nor does he have an opinion, medical or otherwise, concerning whether the passage of three weeks between the injury and plaintiff's first visit with him affected either the manner in which the injury would be treated or the nature or severity of the injury from the December 2010 accident. (Id. at ¶ 7)

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The

4

mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court will not grant the entry of summary judgment without considering the merits of defendants' unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

Doane moves for summary judgment on the grounds that: (1) there is no evidence to support the claim that he was deliberately indifferent to plaintiff's serious medical need; and (2) he should be granted qualified immunity. Medical defendants move for summary judgment on the grounds that plaintiff cannot establish his claims in the absence of an expert.

## IV. DISCUSSION

Plaintiff alleges that Doane violated his constitutional rights when he failed to appropriately address his injury and later prevented him from being seen by medical personnel. Plaintiff alleges that the medical defendants' delay in treating his fractured wrist violated his constitutional rights.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v.*

Gamble, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an

inmate must allege (i) a serious medical need and (ii) acts or omissions by prison

officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at

104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately

indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails

to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837

(1994). A prison official may manifest deliberate indifference by "intentionally denying

or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long

as the treatment provided is reasonable. Lasko v. Watts, 373 F. App'x 196, 203 (3d Cir.

2010) (unpublished) (quoting Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir.

2000)). An inmate's claims against members of a prison medical department are not

viable under § 1983 where the inmate receives continuing care, but believes that more

should be done by way of diagnosis and treatment and maintains that options available

to medical personnel were not pursued on the inmate's behalf. Estelle v. Gamble, 429

U.S. at 107. "[M]ere disagreement as to the proper medical treatment" is insufficient to

state a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004)

(citations omitted).

## A. Claims Against Doane

Doane argues that the evidence does not support plaintiff's deliberate

indifference claims. Plaintiff alleges two separate occurrences wherein he complains

that Doane violated his constitutional rights: (1) when plaintiff was initially injured, and

(2) when Doane did not send plaintiff to medical on December 23, 2010. The unrefuted

6

evidence is that following plaintiff's injury, Doane examined plaintiff's wrist and saw nothing abnormal. Doane, nevertheless, reported the injury to medical who advised him to instruct plaintiff to submit a sick call slip. Doane, who is not a medical care provider, saw nothing amiss. According, it cannot be said that at this juncture Doane was aware of an excessive risk of harm or safety to plaintiff.

At the time of the second occurrence, plaintiff had received treatment, his wrist had been wrapped and was immobilized. The unrefuted evidence is that on December 23, 2010, plaintiff's name did not appear on the medical list and Doane did not receive any telephone calls from medical to add plaintiff to the list. Although medical records refer to a follow-up for December 23, 2010, Doane was not privy to those medical records. Because plaintiff's name did not appear on the medical list and medical did not call to add plaintiff to the list, Doane was not authorized to provide a medical pass to plaintiff. In light of the foregoing, no reasonable jury could find that Doane was deliberately indifferent to plaintiff's medical needs.[4]

### B. Claims Against Medical Defendants

Medical defendants argue that plaintiff cannot establish his claims again them in the absence of an expert. Plaintiff was injured on December 22, 2010 and was first seen by Dr. DuShuttle on January 13, 2011. As previously determined by the court, once plaintiff began seeing Dr. DuShuttle, he received appropriate, continuing treatment. (See D.I. 86 at 17) The issue is whether medical defendants were

---

[4]The court finds no need to address the issue of qualified immunity inasmuch as Doane did not violate plaintiff's constitutional rights.

7

deliberately indifferent to plaintiff's medical needs during the three week period from the time of the injury to the time plaintiff began treatment with Dr. DuShuttle.

Plaintiff received medical treatment from a nurse the evening of his injury, he was x-rayed two days later, and seen by Chuks six days following the injury. Chuks sought an orthopedic consultation which took place January 13, 2011. Plaintiff previously indicated that he intended to call Dr. DuShuttle as a witness to support his position that medical defendants were deliberately indifferent to his medical needs in the delay of treatment. Dr. DuShuttle, however, does not have an opinion, expert or otherwise, concerning the adequacy of the medical care received by plaintiff prior to the time he first saw plaintiff. Nor does Dr. DuShuttle have an opinion, medical or otherwise, concerning whether the passage of three weeks between the injury and plaintiff's first visit with him affected either the manner in which the injury would be treated or the nature or severity of the injury from the December 2010 accident.

Plaintiff was seen immediately following the injury and received treatment. He was then referred to an outside specialist. While there may have been a delay before plaintiff was seen by Dr. DuShuttle, the record is silent on what caused the delay. The court finds that there is no evidence, expert or otherwise, to indicate deliberate indifference. Based upon the record, no reasonable jury could find that defendants violated plaintiff's constitutional rights. Accordingly, the court will grant medical defendants' motion for summary judgment.

## V. CONCLUSION

For the reasons discussed above, the court will grant defendants' motions for summary judgment. (D.I. 91, 93)

An appropriate order will be entered.

8